**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      14-88-SDD-RLB

JOCK R. JONES

## RULING

This matter is before the Court on the *Motion to Vacate under 28 U.S.C. 2255*[1] and *Motion to Correct Sentence and/or Record Pursuant to F.R.C.P. 36*[2] by Defendant Jock R. Jones ("Defendant").  The Government has filed *Oppositions*[3] to these motions, to which Defendant filed a *Reply*.[4]  In his Section 2255 motion, the Defendant contends that he is entitled to relief under *Johnson v. United States*[5] regarding the residual clause of the Armed Career Criminal Act of 1984 (ACCA).[6] In the motion to correct sentence, Defendant contends there are errors in the Presentence Investigation Report ("PSR") which resulted in calculation errors that increased his sentence.  Finally, in his *Supplement* to the Section 2255 motion, Defendant contends he received ineffective assistance of counsel which caused him to agree to a bench trial on the carjacking charge, which he claims resulted in the loss of acceptance of responsibility points and a higher

---

[1] Rec. Doc. No. 66.  Defendant filed a Supplement to this motion at Rec. Doc. No. 73, which the Court has considered.
[2] Rec. Doc. No. 70.
[3] Rec. Doc. Nos. 77, 85, 113.
[4] Rec. Doc. No. 79.
[5] 135 S.Ct. 2551 (2015).
[6] 18 U.S.C. § 924(e).

sentence.

The Court determined that an evidentiary hearing was necessary on Defendant's ineffective assistance of counsel claim.  Counsel was appointed on behalf of Defendant,[7] and the Court took testimony and evidence on this claim on February 26, 2026.[8]  Both the Government and Defendant submitted post-hearing briefs on this claim,[9] and the Court is prepared to rule.

## I.    BACKGROUND FACTS

On April 14, 2014, Defendant kidnapped his ex-girlfriend who was employed at the time as a school bus driver.[10] Defendant, while armed with a handgun, put the gun to his ex-girlfriend's head, forced her onto the school bus, and told her to drive the bus.[11] After the incident, and during Detective Griffin's interview with the ex-girlfriend, she was visibly upset, uncontrollably shaking, and had a bite on her hand, which she indicated Defendant had inflicted on her when she initially resisted his carjacking attempt.[12] Defendant characterizes his conviction as one that "stems from the alleged kidnapping—effectuated through carjacking—and attempted sexual assault" of his ex-girlfriend.[13]

On July 24, 2014, the Defendant was charged by Indictment with possession of a firearm by a convicted felon (Count 1); carjacking (Count 2); and using, brandishing, and carrying a firearm during the commission of a "crime of violence" (i.e., the carjacking)(Count 3).  The Defendant pled guilty to Count 1 on February 2, 2015,[14] waived

---

[7] Rec. Doc. 127.
[8] Rec. Doc. 139.
[9] Rec. Docs. 145, 148.
[10] Rec. Doc. No. 27, p. 1.
[11] Id.
[12] Id. at 2.
[13] Rec. Doc. No. 73, p. 2.
[14] Rec. Doc. No. 28.

a trial by jury on Counts 2 and 3,[15] and proceeded to a bench trial on Counts 2 and 3 on February 23, 2015, which resulted in his conviction of both counts.[16]  On August 20, 2015, the Defendant was sentenced to 384 months of imprisonment which included the statutory, mandatory minimum sentence of 7 years for brandishing a firearm during a crime of violence.[17]  The Defendant appealed his conviction to the Fifth Circuit where the Fifth Circuit rejected Defendant's arguments and held that: "Carjacking is always and without exception a 'crime of violence' as that term is defined in 18 U.S.C. § 924(c)(3)."[18]

Defendant, acting *pro se*, filed the pending motions under Section 2255.  Counsel represented Defendant at the evidentiary hearing on his ineffective assistance of counsel claim, and his counsel submitted a post-hearing brief on this claim.

## II.    PARTIES ARGUMENTS, GENERALLY

Defendant seeks a correction of his sentence after consideration of the Supreme Court's ruling in *Johnson v. United States* that the residual clause is unconstitutional; thus, he claims he should be re-sentenced absent the § 924(c) count.[19] Defendant asserts several arguments. First, he claims the Court plainly erred in denying his motion for judgment of acquittal because, under *Johnson*, carjacking is not a violent crime under the lawful definition for a crime of violence.[20] Second, the base offense level for kidnapping was erroneously applied because Defendant was never charged with kidnapping nor convicted of such crime.[21] Third, Defendant asserts ineffective assistance of counsel.[22]

---

[15] Rec. Doc. No. 25.
[16] Rec. Doc. No. 40.
[17] Rec. Doc. Nos. 49 & 51; *see* 18 U.S.C. § 922(g)(1)
[18] Rec. Doc. No. 64 at 4; *U.S. v. Jones*, 642 F. App'x 304 (5th Cir. Mar. 14, 2016).
[19] Rec. Doc. No. 66-1, p. 3.
[20] Rec. Doc. No. 66-1, p. 4.
[21] Rec. Doc. No. 70, p. 3.
[22] Rec. Doc. No. 73.

The Government opposes Defendant's motion and avers that Defendant's various post-conviction motions be summarily dismissed as they do not warrant an evidentiary hearing.[23]   The Government maintains that Defendant's claims do not raise a factual dispute, and the trial record adequately refutes Defendant's claims.[24] The Government also contends that Defendant's claim of Court errors in sentencing are not cognizable because they were not previously raised on direct appeal, and the purported errors were of a non-constitutional nature.[25]  The Government posits: "Section 2255 does not offer recourse to all who suffer trial errors" but, rather, "is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[26]  Simply, Defendant's habeas motion cannot be allowed as a substitute for an appeal.[27]

The Government argues Defendant's *Johnson* claim is meritless because his carjacking conviction is based upon the elements clause of § 924(c)(3)(A), not the residual clause.[28] The Government submits that carjacking is a crime of violence which can even be based upon a theory of intimidation as opposed to by force or violence.[29]

Regarding the cross-reference to kidnapping in his sentencing, the Government maintains this was proper.[30] Defendant claims that he had to be charged with kidnapping to be sentenced for kidnapping.[31] The Government avers that USSG § 2K2.1(c) and note

---

[23] Rec. Doc. No. 85, p. 10.
[24] *Id.*
[25] *Id.* at p. 4.
[26] *Id.* at p. 6 (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981) (quoting *United States v. Wright*, 2013 WL 3730091 (M.D. La. July 12, 2013)).
[27] *Id.* (citing *Davis v. United States*, 417 U.S. 333, 345 (1974)).
[28] Rec. Doc. No. 77, p. 4.
[29] *Id.* (citing *United States v. Jones*, 854 F.3d 737, 740 (5th Cir. 2017)).
[30] Rec. Doc. No. 85, p. 6.
[31] *Id.*

7 of USSG § 1B1.3 support the proposition that Defendant need not have been charged with, and convicted of, kidnapping to be used as a cross reference at sentencing.[32]

Finally, the Government contends that Defendant was provided effective assistance of counsel and that, even if he was not, he suffered no prejudice because the Court awarded Defendant acceptance of responsibility points.[33]

## III.    LAW & ANALYSIS

### A.    Section 2255 Standard

Under 28 U.S.C. § 2255, a federal inmate can file a motion to vacate, set aside, or correct their sentence if, "that sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Fifth Circuit has stated that, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised in a direct appeal and would, if condoned, result in a complete miscarriage of justice." [34]

"When a § 2255 motion is filed, the district court must first conduct a preliminary review."[35] "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."[36] If the motion raises a non-frivolous claim to relief, the court must order the government to file a response or to take other appropriate action.[37] After reviewing the

---

[32] *Id*. at p. 7.
[33] *Id*. at pp. 8-10.
[34] *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).
[35] *United States v. Hutton*, No.16-184, 2020 WL 5517332, at *2 (E.D. La. Sep. 14, 2020)
[36] Rules Governing § 2255 Proceedings, Rule 4(b).
[37] *Id.*

government's response along with any other relevant materials, the court must determine whether an evidentiary hearing is warranted.[38]   An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[39] No evidentiary hearing is required, however, if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations."[40]

When a defendant has exhausted his right to appeal, his conviction and sentence are presumed to be fair and final.[41] Therefore, an issue raised for the first time in a motion pursuant to 28 U.S.C. § 2255 will be considered only if the defendant shows "cause" for his failure to previously raise the issue and "actual prejudice" resulting from the alleged error.[42] Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255.[43]

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney and are provided a liberal construction.[44] Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."[45] Accordingly, "[a]bsent evidence in the record, a court cannot

---

[38] Rules Governing § 2255 Proceedings, Rule 8.
[39] 28 U.S.C. § 2255(b).
[40] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).
[41] *United States v. Frady*, 456 U.S. 152,164 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)(en banc).
[42] *Frady*, 456 U.S. at 167-68; *Shaid*, 937 F.2d at 232.
[43] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993)(quoting *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989)).
[44] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).
[45] *Pineda*, 988 F.2d 22 at 23.

consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition ... to be of probative evidentiary value."[46]

### B. *Johnson* Claim

Defendant suffers from the misapprehension that carjacking does not constitute a crime of violence under the law.  "When determining whether an offense is a [crime of violence] under § 924(c)(3)'s elements clause, we 'look[] only to the statutory definitions—the elements—of a defendant's offense, and not to the particular facts underlying the convictions.'"[47] Carjacking occurs when, "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate…commerce from the person…by force and violence or by intimidation, or attempts to do so.…"[48] Unlike conspiracy, for example, carjacking necessarily involves force and violence. In the present case, the Defendant threatened the victim with a gun, forced her onto the school bus, and later sexually assaulted her.[49]

A wealth of Fifth Circuit jurisprudence on this issue forecloses Defendant's argument. "[A] review of precedent in the Fifth Circuit makes clear that 'carjacking fits under the definition set forth in § 924(c)(3)(A)—it has an element the use, attempted use, or threatened use of physical force against the person or property of another.'"[50]

Defendant argues intimidation does not qualify under the elements clause; however, several courts have held that "a crime that has an element of taking 'by force

---

[46] *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).
[47] *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019) (quoting *United States v. Buck*, 847 F.3d 267, 274 (5th Cir.), *cert. denied*, ---U.S.---, 138 S. Ct. 149, 199 L.Ed.2d 89 (2017)).
[48] 18 U.S.C.A. § 2119.
[49] Rec. Doc. No. 27, p. 1; Rec. Doc. 55, p. 69.
[50] *United States v. Portis*, No. 16-134, 2019 WL 6173773, at *2 (E.D. La. Nov. 20, 2019) (quoting *United States v. Jones*, 854 F.3d 737, 740 (5th Cir. 2017)).

and violence or by intimidation' is a 'crime of violence' under § 924(c)(3)(A)."[51] In *United States v. Evans*, the Fourth Circuit held that "the employment of intimidation to commit the federal crime of carjacking is encompassed within the 'use, attempted use, or threatened use of physical force' required under Section 924(c)(3)(A) for commission of a crime of violence."[52]  The reasoning in *Evans* is significant. The court held "that the elements of carjacking under § 2119 satisfy § 924(c)(3)(A) and…the court 'is not aware of any case in which a court has interpreted the term "intimidation" in the carjacking statute as meaning anything other than a threat of violent force.'"[53]

The decision in *Tolbert v. United States* also undermines Defendant's arguments regarding the residual clause, as that court explained that the ACCA's residual clause differs from § 924(c), and *Johnson* does not apply to carjacking as stated in 18 U.S.C. § 2119.[54] The *Tolbert* court ruled that, "whether a defendant convicted under § 2119 took a motor vehicle by force and violence, or by intimidation, the crime necessarily involved the 'use, [attempt] to use, or threatened use of physical force' encompassed by the force clause of § 924(c)(3), making the residual clause of § 924(c)(3) irrelevant."[55] Thus, applicable jurisprudence supports the Government's position that Defendant's conviction falls under § 924(c)(3)(A) rather than § 924(c)(3)(B), and § 924(c)(3)(A) is still constitutional.

---

[51] *United States v. Jones*, 854 F.3d 737, 740 (5th Cir. 2017) (citing *United States v. Brewer*, 848 F.3d 711, 715-716 (5th Cir. 2017) (holding that the bank robbery statute, 18 U.S.C. § 2113(a)—which similarly requires taking property "by force and violence, or by intimidation"—is a crime of violence under United States Sentencing Guidelines § 4B1.2, which defines "crime of violence" in exactly the same manner as § 924(c)(3)(A)).

[52] *United States v. Evans*, 848 F.3d 242, 246 (4th Cir. 2017).

[53] *United States v. Jones,* 854 F.3d 737, 740-741 (5th Cir. 2017), *abrogated in part on other grounds by Lang v. Johnson*, 847 F. App'x 233 (5 th Cir. May 11, 2021)(quoting *Evans*, 848 F.3d at 247)).

[54] *Tolbert v. United States*, No. 3:16-cv-1897-G-BN, 2017 WL 507408 at *3 (N.D. Tex. Jan. 17, 2017).

[55] *Id*. at *4.

Further, Defendant's suggestion that this case involved no intimidation is simply contrary to the facts found at trial. There can be no serious argument that holding a handgun to someone's head while forcing that person onto a school bus qualifies as the use, attempted use, or threatened use of physical force against a person under § 924(c)(3)(A). It was not necessary that the Defendant actually shoot the gun under the elements clause. His threatened use of physical force with the gun is sufficient. Accordingly, the Court finds that it correctly applied § 924(c)(3)(A) rather than § 924(c)(3)(B) because Defendant's actions satisfy the elements clause. Defendant's *Johnson* claim is DENIED.

### C. Cross-Reference to Kidnapping for Sentencing Purposes

Defendant claims the base offense level for kidnapping was erroneously applied at sentencing because he was never charged with kidnapping nor convicted of such crime.[56] The Government contends this sentencing error claim, never raised on appeal, is not cognizable as a matter of law. The Government argues that, in the *Motion to Correct Sentence*, the Defendant asserts sentencing errors but does not attribute these errors to ineffective assistance of counsel. The Fifth Circuit has plainly held: "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed … Misapplications of the Sentencing Guidelines fall into neither category and, hence, are not cognizable in § 2255 motions."[57] It is undisputed that these claims regarding application of the sentencing guidelines were not raised on appeal. Claims not raised on direct appeal are procedurally defaulted unless the petitioner demonstrates "cause" and

---

[56] Rec. Doc. No. 70, p. 3.
[57] *U.S. v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)(citations omitted).

"prejudice" for his failure to do so.[58]  Defendant has not addressed this failure. While the Court agrees that Defendant's claim of sentencing errors is not cognizable as these issues were never presented to the Court of Appeals on direct review,[59] the Court will nevertheless consider the merits of this claim. Under § 2K2.1(c)(1) of the Sentencing Guidelines, "[i]f the defendant used or possessed any firearm…cited in the offense of conviction in connection with the commission or attempted commission of another offense…apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above…."[60]  As explained in *United States v. Smith*, "the cross-reference provision contains no language requiring that the defendant be convicted of the other offense."[61]  The Fifth Circuit in *United States v. Branch* applied the *Smith* standard and held that "the district court did not err in applying the § 2K2.1(c) cross-reference for criminal conduct of which [defendant] was acquitted."[62]  Notably for the purpose of determining this motion, the Fifth Circuit held that standard "[does] not require that the 'other offense' be charged and convicted."[63]

The Government argues that § 1B1.3 furthers its argument and supports its understanding of § 2K2.1(c).[64]  The district court's decision in *Strong v. United States* provides support for this contention. [65]  In *Strong*, the petitioner was convicted of being a felon in possession of a firearm; during the commission of the offense, a child was struck

---

[58] *Shaid*, 937 F.2d at 232.
[59] *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).
[60] Rec. Doc. No. 85, p. 7 (citing U.S.S.G. § 2K2.1(c)(1)).
[61] *Id*. (quoting *United States v. Smith*, 997 F.2d 396, 397 (8th Cir. 1993)).
[62] Rec. Doc. No. 85, p. 7 (quoting *United States v. Branch*, 91 F.3d 699, 743 (5th Cir. 1996)).
[63] *Id*. (quoting *Branch*, 91 F.3d at 738, 743).
[64] *Id*.
[65] *Strong v. United States*, No. 1:16CR52-NBB, 2019 WL 615358 (N.D. Miss. Feb. 13, 2019).

by a stray bullet fired by petitioner, and he was arrested for aggravated assault.[66]   The

petitioner argued on a Section 2255 motion that he received ineffective assistance of

counsel because his lawyer did not file an objection to the court's consideration of

uncharged offenses and the pending state-court offense in reaching his sentence.[67]   The

court rejected the petitioner's argument and held that, "[b]ecause [defendant] shot and

wounded a child while committing the offense of being a felon in possession of a firearm,

the aggravated assault Guideline was used to establish the based offense level."[68] Thus,

it was not improper for the Court to cross-reference kidnapping in sentencing the

Defendant.  Accordingly, Defendant's *Motion* is DENIED as to this claim.

### D.  Ineffective Assistance of Counsel[69]

Defendant also claims he received ineffective assistance of counsel. The crux of

Defendant's ineffective assistance of counsel claim is that his defense counsel, Richard

Mark Upton ("Upton"), "mistakenly believed" that he was not guilty of carjacking because

the facts of the case "didn't fit carjacking" in the mind of counsel.[70]   Based on this

erroneous advice and counsel's "not understanding the law of carjacking,"[71] the

Defendant attests he "elected to proceed" with a bench trial on that count.[72]  Defendant

attests:

---

[66] *Id.* at *1.
[67] *Id.* at *3.
[68] *Id.*
[69] Under Section 2255(b), the district court is the fact finder in Section 2255 evidentiary hearings. Further, a Section 2255 petitioner bears the burden of proving his case by a preponderance of the evidence. *United States v. Carr*, No. H-10-197, 2014 WL 6981996, at *2 (S.D. Tex. Sep. 22, 2014)(citation omitted). The Court took evidence and testimony at the evidentiary hearing on February 26, 2026. The following constitutes the Court's combined findings of fact and conclusions of law on Defendant's ineffective assistance of counsel claims.
[70] Rec. Doc. No. 73, p. 6.
[71] *Id.*
[72] Rec. Doc. No. 73-1, p. 1.

> Had Upton explained that I was legally guilty and that the facts of my case most certainly "fit" carjacking, and had Upton advised me that I could have entered an open guilty plea in exchange for a likely acceptance of responsibility adjustment to my sentence, I would have entered an open guilty plea to all the charges against me.[73]

In support of the deficient prong, Defendant likens this case to that decided by the Third Circuit in *United States v. Booth*.[74] In *Booth*, the court held that the defendant was entitled to an evidentiary hearing because counsel's alleged failure to inform the defendant that he could have entered an open plea to both charges could have potentially met the deficiency and prejudice prongs of the ineffective assistance of counsel test.[75] Defendant contends his counsel should have advised Defendant that he could enter an open plea "irrespective of any agreement with the government," and that "if he pleaded guilty, he would likely receive a [] reduction for acceptance of responsibility."[76] Defendant claims he would have entered an open plea because he *did* plead guilty to one of the three counts against him, and his habeas testimony illustrates a likelihood that he would have accepted an open plea.[77] Further, Defendant claims there is a reasonable probability his sentence would have been less severe had an open plea been entered.[78] This argument is based on Defendant's belief that an open plea would have resulted in Defendant receiving a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 instead of the two-level reduction awarded by the Court.[79]

---

[73] *Id.* at pp.1-2.
[74] Rec. Doc. 73, pp. 6-9 (citing *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005)).
[75] *Booth*, 432 F.3d at 550.
[76] Rec. Doc. No. 73, pp. 8-9 (incorrectly citing *United States v. Garcia*, 2015 U.S. Dist. LEXIS 12775 (5th Cir. 2015) (unpublished)(Dennis, J., concurring)).
[77] *Id.* at pp. 9-10.
[78] *Id.* at p. 10.
[79] *Id.* at pp. 10-11.

The Government counters that defense counsel provided effective assistance of counsel.[80]   Additionally, the Government contends that there was no error by defense counsel since Defendant was ultimately awarded reduction points for acceptance of responsibility.[81] Indeed, the Defendant received a two-level reduction for acceptance of responsibility.[82] The Government contends Defendant's claim of ineffective assistance of counsel for the failure to pursue a third level reduction for acceptance of responsibility is without merit since such a request is dependent upon motion of the Government,[83] and no such motion was ever made.[84] Such relief was unavailable without action by the Government; thus, it could not be attributed to a failure of defense counsel.[85]   The Government also argues that the Defendant failed to demonstrate that defense counsel failed to research facts and law and/or raise arguments based upon controlling precedent.[86] Simply, there is no evidence before the Court to substantiate Defendant's suggestion that he would have received a lower sentence.[87]

Because Defendant submitted sworn statements regarding the advice Upton provided, the Court determined an evidentiary hearing was required under *United States v. Garcia*[88] and *United States v. White*,[89] cases wherein the defendants challenged whether they received effective assistance of counsel related to counsels' advice regarding plea options versus going to trial and the impact of acceptance of responsibility

---

[80] Rec. Doc. No. 85, p. 8.
[81] *Id*. at p. 9.
[82] *Id*. (citing Rec. Doc. No 73, p. 10).
[83] *Id*. (quoting U.S.S.G. § 3E1.1(b)).
[84] *Id*.
[85] Rec. Doc. No. 85, p. 9.
[86] *Id*. at p. 10.
[87] *Id*.
[88] 619 F. App'x 276 (5th Cir. 2015).
[89] 834 F. App'x 108 (5th Cir. 2021).

points available with a plea.  In both cases, the Fifth Circuit remanded the Section 2255

motions back to the district court based on the district court's failure to hold an evidentiary

hearing to resolve factual disputes arising out of these representations.  Based on these

decisions, the Court set this matter for an evidentiary hearing on this claim.

*Strickland v. Washington* articulates the standard for an ineffective assistance of

counsel claim.[90] In *Strickland*, the Supreme Court held that, to obtain relief, a defendant

must show (1) that counsel's performance was deficient and (2) that the deficient

performance prejudiced the defense.[91] A deficient performance is one in which the

attorney's actions were unreasonable under prevailing professional norms.[92]  A defendant

must prove both prongs to succeed in an ineffective assistance of counsel claim.[93]

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's

conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[94]

"The defendant must show that counsel's representation fell below an objective standard

of reasonableness."[95]  In analyzing counsel's performance, a reviewing court must take

into account the reasonableness of counsel's actions under prevailing professional norms

and in light of all of the circumstances.[96] The reviewing court must "judge ... counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct."[97] Furthermore, a petitioner must overcome a strong presumption that defense

counsel's conduct falls within a wide range of reasonable representation.[98] "[I]t is all too

---

[90] *Strickland v. Washington*, 466 U.S. 668 (1984).
[91] *Id.* at 687.
[92] *Id*. at 687-688.
[93] *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).
[94] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).
[95] *Strickland*, 466 U.S. at 687-88.
[96] *See Id*., 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).
[97] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)(quoting *Strickland*, 466 U.S. at 690).
[98] *Harrington v. Richter*, 562 U.S. 86,104 (2011)(citing *Strickland*, 466 U.S. at 689).

easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."[99]  With these principles in mind, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.[100]

Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.[101] A reasonable probability is that sufficient to undermine confidence in the outcome.[102] Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."[103] This standard requires a "substantial," not just "conceivable," likelihood of a different result.[104]  In making this determination as to prejudice, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[105] Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.[106]

"The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy."[107] For

---

[99] *Bell v. Cone*, 535 U.S. 685, 702 (2002)(citing *Strickland*, 466 U.S. at 689).

[100] *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)(counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'")(quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

[101] *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998)).

[102] *Strickland*, 466 U.S. at 694.

[103] *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693).

[104] *Harrington*, 562 U.S. at 112.

[105] *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).

[106] *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)(citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

[107] *Thornton v. Hubert*, No. 08-111-A-M2, 2008 WL 2816036 at *2 (M.D. La. June 10, 2008) (citing *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988)).

this type of claim, courts should consider the "totality of the evidence before the judge and jury."[108] "Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment."[109] Thus, Defendant bears a high burden of proof and must demonstrate, by a preponderance of the evidence, that his counsel was ineffective.[110] "This reasonableness standard requires counsel 'to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."[111] With these legal principles in mind, the Court turns to the question at hand.

Prior to the evidentiary hearing, the Court entered an Order Finding Waiver of Attorney-Client Privilege and Compelling Production of Records.[112] The Parties jointly submitted Upton's client file for the Defendant, which was in the possession of the Federal Public Defender's Office.[113] The testimony and evidence adduced at the evidentiary hearing established the following facts.  Upton, now retired, began his criminal defense law practice beginning in 1976, and he served as a Federal Public Defender in the Middle District of Louisiana for approximately fifteen years.[114] In September 2014, Upton was

---

[108] *Strickland*, 466 U.S. at 695.

[109] *Thornton*, 2008 WL 2816036 at *2 (citing *Strickland*, 104 S. Ct. at 2066).

[110] *Spikes v. Louisiana*, No. 18-08884, 2019 WL 3308402 at *12 (E.D. La. May 28, 2019) (citing *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993)).

[111] *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir.2000)(quoting *Williamson*, 183 F.3d at 462–63).

[112] Rec. Doc. 135.

[113] JX 1. This file contains all relevant records from the file of the Federal Public Defender (FPD). Some pages contain notes taken by Upton's paralegal, Lori Dumaine, at a meeting with defendant on January 30, 2015. Rec. Doc. 141, at 11-12, 20; JX 1 at 8. Upton testified at the hearing that it was Dumaine's job to take notes and that her notes were reliable. See Tr. at 11-12, 20.

[114] Rec. Doc. 141, p. 9, 27. While Upton did not exclusive do criminal defense work, he always did criminal defense work as part of his practice.  *Id.* at 28.

appointed to represent Defendant in this matter.[115] Over the course of his legal career, Upton estimated that he had represented thousands of criminal defendants.[116] Although Upton did not remember the specific facts of this case, he testified that his usual practice was to meet his clients early to discuss the facts, usually at the time of the initial appearance.[117] Upton testified unequivocally that he always advised his clients the consequences of proceeding to trial.[118]

Although Upton did not recall specific conversations he had with Defendant regarding this case, Upton consulted his client's case file and answered questions about his general practice procedures in representing criminal defendants in federal court. The client file reflects that when Upton initially met with Defendant to discuss the facts of the case, Defendant told Upton that he did not intend to kill or harm the victim, he only wanted to talk to her.[119]  The information gained from this conversation prompted Upton to, on October 17, 2014, send a plea offer to Rene Solomon, the prosecuting Assistant United States Attorney.[120] In that letter, Upton advised that he had met with Defendant and they discussed the possibility of "disposition of this case by a plea."[121] He further advised Solomon that Defendant was willing to plead guilty to Count one and agree to a ten-year sentence (the statutory maximum) in exchange for dismissal of the remaining two counts.[122] Upton indicated that he had "reservations" about the carjacking charge, stating that "two of the elements are not supported by the evidence."[123] First, he noted that "it is

---

[115] Rec. Doc. 3.
[116] Rec. Doc. 141, p. 30.
[117] *Id.* at 20-21, 23, 33.
[118] *Id.* at 27-31, 36-38.
[119] *Id.* at 54-55; JX1 at 8, 13-14.
[120] JX 1, pp. 6-7.
[121] *Id.* at 6.
[122] *Id.*
[123] *Id.*

questionable that Mr. Jones had any intent to steal the bus"; second, he stated that the Defendant did not have the intent to kill or cause great bodily harm.[124] The Government rejected this plea offer.[125]

On November 5, 2014, Upton advised Defendant via letter that their plea offer had been rejected and that meant "we are looking at going to trial."[126] However, Upton advised Defendant that he told Solomon that Defendant "would still want to enter a plea to the felon in possession of a gun charge."[127]

On January 26, 2015, Upton filed a request for special jury charge on the carjacking offense.[128] This charge was identical to the Fifth Circuit Pattern Jury Charge for the offense, except Upton sought a change regarding the timing of the intent. Upton requested that the jury instructed that it must find "[t]hat the defendant possessed such intent *at the moment* he took the victim's vehicle."[129]

Defendant's file notes reflect that on January 30, 2015, Upton and his legal assistant again visited Defendant at the West Baton Rouge Parish jail.[130] Upton advised Defendant that the Government was required to prove that he had the intent to kill and/or cause great bodily harm to the victim; file notes indicate Defendant advised that he never intended to kill the victim,[131] and the Defendant admitted the same when he testified at the evidentiary hearing.[132] At this meeting, Upton explained to Defendant his requested

---

[124] *Id.*
[125] *Id.* at 5.
[126] *Id.*
[127] *Id.*
[128] Rec. Doc. 19.
[129] *Id.* (emphasis added).  The standard charge requires that the jury find "that the defendant possessed such intent when he took [attempted to take] the victim's vehicle." Fifth Circuit Pattern Jury Instructions (Criminal Cases), No.2.81 (2012).
[130] JX 1, p. 8.
[131] *Id.*
[132] Rec. Doc. 141, p. 55.

change to the jury charge, and he advised Defendant that "[t]his will be a big fight."[133] Later during this discussion, the file notes indicate that the Defendant "asked … how he thinks trial will come out;" Upton's response was "you will lose 3 pts acceptance."[134] Upton then played the recordings of the incident for Defendant, asked if he was ok with going to trial, and Defendant answered that he didn't "have a choice," because he could not plead guilty to carjacking.[135]  The matter proceeded to a bench trial before the undersigned, and Defendant was subsequently convicted of carjacking.

At the evidentiary hearing, Defendant admitted that the facts he recited to Upton justified Upton's belief that Defendant lacked the requisite intent for the carjacking crime:

> Q:  OKAY.  AND THAT'S EXACTLY WHAT YOU TOLD MR. UPTON, ISN'T IT?
>
> A:  YES MA'AM.
>
> Q:  THAT YOU DIDN'T HAVE THAT INTENT TO HARM HER OR KILL HER, AND ALL YOU WANTED TO DO WAS TALK TO HER. CORRECT?
>
> A:  YES, MA'AM.
>
> Q:  AND YOU UNDERSTAND, DON'T YOU, THAT IF YOU DID NOT HAVE THE INTENT TO HARM OR KILL HER, YOU WERE NOT GUILTY OF CARJACKING.  IS THAT RIGHT?
>
> A:  YES.
>
> Q:  JUST LIKE MR. UPTON TOLD YOU.  CORRECT?
>
> A:  NO, MA'AM.
>
> Q:  DIDN'T MR. UPTON TELL YOU THAT IF HE – IF YOU DID NOT HAVE THE INTENT TO HARM OR KILL MS. CALAHAN AT THE PRECISE MOMENT YOU TOOK THE VEHICLE, YOU WERE NOT GUILTY OF CARJACKING?

---

[133] JX 1, p. 8.
[134] *Id.* at p. 16.
[135] *Id.* at p. 17.

A:    YES, MA'AM.  BUT I NEVER TOOK POSSESSION OF THE VEHICLE.

Q:    OKAY.  I'M NOT ASKING YOU ABOUT THAT, MR. JONES.  MR. UPTON ADVISED YOU THAT IF YOU DID NOT HAVE THE INTENT TO HARM OR KILL MS. CALAHAN AT THE PRECISE MOMENT YOU FORCED HER TO TAKE THE BUS, THAT YOU WERE NOT GUILTY. CORRECT?

A:    YES, MA'AM.

Q:    SO YOU'RE SAYING THAT IF MR. UPTON HAD TOLD YOU THAT YOU COULD ENTER AN OPEN PLEA AGREEMENT AND POSSIBLY GET THREE POINTS OF ACCEPTANCE, YOU WOULD HAVE PLED GUILTY TO A CRIME THAT YOU WERE NOT GUILTY OF?

A:    NO, MA'AM.

Q:    WELL, WE'VE JUST ESTABLISHED THAT, BY YOUR VERSION OF THE FACTS, YOU'RE NOT GUILTY. CORRECT?

A:    YES.

Q:    BUT YOU'RE ALSO SAYING YOU WOULD HAVE PLED GUILTY. CORRECT?

A:    YES.

Q:    SO YOU'RE SAYING YOU WOULD HAVE PLED GUILTY EVEN THOUGH YOU WEREN'T GUILTY? IS THAT WHAT YOU'RE SAYING?

A:    CORRECT.

Q:    AND YOU WOULD HAVE HAD TO TELL THE COURT UNDER OATH THAT YOU DID, IN FACT, INTEND TO HARM OR KILL MS. CALAHAN AT THE PRECISE MOMENT YOU TOOK THE BUS. CORRECT?

A:    YES.

Q:    AND YOU WOULD HAVE DONE IT, EVEN THOUGH YOU'RE SAYING IT'S NOT TRUE?

A:    YES.[136]

---

[136] Rec. Doc. 141, pp. 55:6-56:25.

***

Q:    ALL RIGHT. AND YOU SAID – THE SECOND PART OF WHAT YOU SAID WAS THAT MR. UPTON TOLD YOU THAT THE STATUTE DID NOT FIT THE FACTS. CORRECT?

A:    YES, MA'AM. HE SAID, "THE ELEMENTS DID NOT FIT CARJACKING."

Q:    AND SPECIFICALLY HE TOLD YOU THAT "YOU DIDN'T HAVE THE INTENT THAT WAS NECESSARY FOR A CONVICTION," DIDN'T HE?

A:    YES, MA'AM.

Q:    WHICH MEANS THAT MR. UPTON'S ADVICE WAS CORRECT, WASN'T IT?

A:    AT THAT POINT, YES.[137]

### 1.   There was no deficiency in counsel's performance

Applying the law to the facts of the case, the Court finds that the legal assistance Upton provided to Defendant was not constitutionally defective.   Notably, under *Strickland*, Defendant must overcome a "highly deferential" presumption that Upton's representation of him was effective.[138]

Defendant argues that "[h]ad he been properly advised of the unwinnable nature of his case," he would have pled guilty as charged to the carjacking count.[139] More specifically, Defendant claims that his decision to proceed to trial was based entirely on Upton's erroneous theory of defense which Upton should have known was not viable under the Supreme Court's decision in *Holloway v. United States.*[140] The *Holloway* Court held that the intent element of the carjacking statute is satisfied when the Government

---

[137] *Id.* at p. 58:1-14.
[138] *Strickland*, 466 U.S. at 689.
[139] Rec. Doc. 145, p. 3.
[140] 526 U.S. 1 (1999).

proves that "at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)."[141]

By Defendant's own admission under oath, the facts he provided to Upton reasonably justified Upton's belief that Defendant was not guilty of the crime of carjacking because Defendant denied that he had intent to harm or kill at the moment he demanded or took control of the vehicle. Indeed, Defendant continues to maintain his innocence on this point. Defendant further testified that pleading guilty to the offense would have been lying to the Court under oath just to get a third point of acceptance of responsibility. Thus, Upton's interpretation of the *Holloway* decision as applied to the facts presented by the Defendant provided what Upton believed to be a viable theory of defense. The record reflects that Upton investigated the facts of this case and performed legal research in developing this theory, evidenced by his filing a Trial Brief with the Court[142] and requesting a special jury charge regarding intent.[143] Upton's recommendation to proceed to a bench trial was objectively reasonable considering the evidence demonstrating that Defendant communicated that he had "no choice" but to proceed to trial on the carjacking count, having stated to Upton that he could not plead guilty to carjacking.[144]

While the Court ultimately disagreed with Upton's theory of defense and his interpretation of *Holloway*, that is not dispositive of whether Upton provided constitutional assistance of counsel. The standard for effective assistance of counsel does not require flawless advocacy; rather, it focuses on whether counsel's performance fell within a

---

[141] *Id.* at 12.
[142] Rec. Doc. 30.
[143] Rec. Doc. 19.
[144] JX at p. 17.

reasonable range, giving deference to strategic decisions made after thorough investigation and within the circumstances known to counsel. Indeed, the Fifth Circuit has held that, where an attorney "may have been mistaken in part of his legal reasoning does not constitute ineffectiveness where the ultimate strategic choice was reasonable."[145] Moreover, "[e]ven if reasonable jurists could debate whether counsel's strategic decisions were based upon an erroneous view of the law, such error, alone, 'does not give rise to a constitutional ineffectiveness claim', so long as the decision 'was a conscious and informed tactical one'."[146]

The Court is also unpersuaded that Defendant was not made aware of his options to plead guilty to the carjacking charges, either via a plea agreement or an "open" plea, or that he might receive a third point for acceptance of responsibility. The file notes reflect that Upton was candid with Defendant about the risk of going to trial, advising him that it would be a "big fight" and even presuming the chance of conviction by advising Defendant about the loss of three acceptance of responsibility points. These discussions were noted in Defendant's file, and Defendant failed to present any credible evidence that such advice was not provided by Upton during these meetings.

The file notes from Upton's meetings with Defendant, along with Upton's credible testimony about his standard operating procedures in advising criminal defense clients for decades, persuade the Court that Defendant was properly advised about the risks of going to trial on the carjacking charges. Upton credibly testified that he always advised his clients of all trial options and the consequences of those options, including how these

---

[145] *Druery v. Thaler*, 647 F.3d 535, 540 (5th Cir. 2011).
[146] *Alstyne v. Cockrell*, 35 F. App'x 386, at *7 (5th Cir. 2002)(quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir.1997) (internal quotation marks omitted)).

choices could affect the award of acceptance of responsibility points.[147]

The idea that Defendant was unaware that he could enter an "open plea" without a plea agreement on the carjacking charge is also undermined by Defendant's own history, particularly since Defendant had previously entered an open plea of guilty in *United States v. Jones*, 2007-CR-115-JJB-CN, Doc. 49 at 3 (M.D. La. 2010).  The record reflects that the Defendant also testified that he entered an open plea of guilty in this case to the felon-in-possession charge.  The suggestion that Defendant did not understand that he could have also entered an open plea to all the charges is simply not supported by the record evidence or common sense.

### 2.  Defendant Has Failed to Show Prejudice

Even if Defendant had demonstrated that Upton's counsel was constitutionally deficient, Defendant's claim would still fail because he has failed to establish that he was actually prejudiced by any purported deficiency.  As discussed above, Defendant's burden on prejudice is heavy: he must affirmatively prove by a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.[148] While the Court acknowledges that "any amount of actual jail time has Sixth Amendment significance,"[149] Defendant has not proven that this Court would have given him a shorter sentence had he been awarded a third point for acceptance of responsibility.

Had Defendant's offense level been reduced by a single point, that would not have reduced the upper end of the guidelines range, the range within which this Court imposed sentence.  This Court imposed a 384-month guideline sentence, based on a guidelines

---

[147] Rec. Doc. 141, pp. 36-39.
[148] *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998)).
[149] *Glover v. United States*, 531 U .S. 198, 203, 121 S.Ct. 696 (2001).

range of 292–300 months on Counts 1 and 2 and a consecutive term of 84 months on Count 3.[150] Defendant has not shown that lowering his range to 262–300 months, plus a consecutive guidelines range term of 84 months[151] would have caused the Court to stray from the 384 months imposed. Indeed, this Court imposed the statutory maximum for Count 1 and Count 2.[152] In imposing sentence, this Court referred to Defendant's conduct as "mean and cruel."[153] The Court also noted that Defendant had "a very long history of the same kind of conduct as the offense conduct."[154] Importantly, the Court noted that Defendant had committed the instant offense while on supervision for a previous charge, stating this demonstrated that the Defendant is "not capable of following societal rules, and he demonstrates that he has anger and abuse issues."[155] There is simply no evidence before the Court to demonstrate a reasonable probability that the Court would have given Defendant a shorter sentence had he received a third point of acceptance of responsibility. Accordingly, Defendant has failed to establish a claim for relief under Section 2255 for ineffective assistance of counsel.

---

[150] Rec. Doc. 43 at p. 24; Doc. 56 at pp. 8, 18; Statement of Reasons at pp. 1–2, 4.
[151] *See* Rec. Doc. 43 at pp. 7, 24; Statement of Reasons at p. 1; U.S.S.G. § 5A (Nov. 1, 2014).
[152] Rec. Doc. 43, p. 24; Rec. Doc. 56, p. 17.
[153] Rec. Doc. 56, p. 16.
[154] *Id.* at p. 17.
[155] *Id.*

## IV.    CONCLUSION

For the reasons set forth above, Defendant's *Motion to Vacate under 28 U.S.C. 2255*[156] and *Motion to Correct Sentence and/or Record Pursuant to F.R.C.P. 36*[157] are DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this _1st_ day of ____June____, 2026.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[156] Rec. Doc. No. 66.  Defendant filed a Supplement to this motion at Rec. Doc. No. 73, which the Court has considered.
[157] Rec. Doc. No. 70.